UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES E. CANADA,<br>Petitioner,<br>v.<br>JOEL MARTINEZ,<br>Respondent. | Case No. 17-cv-01048-JD<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**<br><br>Docket No. 15 |

James Canada, a pro se state prisoner, has brought a habeas petition pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the Court. Canada filed a traverse. The petition is denied.

## BACKGROUND

A jury found Canada guilty in 2014 of indecent exposure with a prior conviction of child molestation. *People v. Canada*, No. A142597, 2015 WL 5895456, at *1 (Cal. Ct. App. Oct. 8, 2015). It was also found true that Canada had two prior serious felony convictions (prior strikes) and three prior prison-term convictions. *Id*. He was sentenced to an aggregate term of nine years in state prison. *Id*. The California Court of Appeal affirmed the conviction on October 8, 2015. *Id*. The California Supreme Court denied review on December 16, 2015. Answer, Exs. 7, 8.

The California Court of Appeal summarized the facts of the crime as follows:

> On October 13, 2013, at about 11:00 a.m., Elizabeth Patrick and her friend, Elisa Sanchez, were in a Santa Rosa park with their children. They saw Canada, who appeared to be homeless, and they offered him some food. Canada spoke to them about Jesus, but then started cursing and swearing. He commented that Sanchez's son was cute. Canada then moved away from them and lay on the ground. About five minutes later, Patrick's 11–year–old daughter drew Patrick's

>attention back to Canada. Canada's pants were pulled down to his ankles, his legs were spread, and he was "masturbating full. You could just see everything. I mean, everything." As Canada masturbated, he was facing the children and smiling. Patrick's daughter was scared.
>
>Patrick and Sanchez gathered their children and started to leave the park. Canada got up and began to follow them. Sanchez yelled to her son to call 911, and Canada began to walk in the opposite direction. Patrick, Sanchez and the children waited at a corner for the police to arrive and saw Canada coming toward them on the sidewalk. They started yelling, and Canada turned around and "took off." Canada was apprehended by the police early that afternoon.

*Canada*, 2015 WL 5895456, at *1.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). In conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the Court looks to the last reasoned opinion. *See Nunnemaker*, 501 U.S. at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In this case the Court looks to the opinion of the California Court of Appeal for the sole claim in the petition.

Canada's sole ground for federal habeas relief is that he was denied his Sixth Amendment right to represent himself pursuant to *Faretta v. California*, 422 U.S. 806 (1975).

## SELF-REPRESENTATION

### Legal Standard

A criminal defendant has a Sixth Amendment right to self-representation. *Faretta*, 422 U.S. at 832. But a defendant's decision to represent himself and waive the right to counsel must be unequivocal, knowing and intelligent, timely, and not for purposes of securing delay. *Id*. at 835; *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994); *Adams v. Carroll*, 875 F.2d 1441, 1444 & n.3 (9th Cir. 1989). Defendant also must be competent to waive counsel. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). If, however, the defendant is in the "grey area," where he is competent to stand trial and waive counsel but suffers from a severe mental illness to the point where he is not competent to conduct trial proceedings, the Sixth Amendment does not bar the state from insisting upon representation. *Indiana v. Edwards*, 554 U.S. 164, 172-77 (2008). The Supreme Court in *Edwards* did not adopt a specific standard for competency to conduct trial proceedings, instead leaving "to the discretion" of the trial judge whether the defendant has the mental capacity to conduct the trial proceedings. *United States v. Ferguson*, 560 F.3d 1060, 1068

3

(9th Cir. 2009) (citing *Edwards*, 554 U.S. at 176-77) (remanding for district court to determine whether, in light of *Edwards*, defendant's bizarre behavior prior to, during and post-trial precluded his self-representation); *see also United States v. Thompson*, 587 F.3d 1165, 1171-73 (9th Cir. 2009) (finding district court did not abuse its discretion in determining defendant was competent to represent himself after conducting a hearing to determine whether defendant's mental state would permit the court to proceed with trial; indeed, district court "did exactly what *Edwards* and *Ferguson* instruct").

The standard for competency to waive counsel for purposes of pleading guilty, which does not apply here, is identical to the standard for competency to stand trial. *Indiana v. Edwards*, 554 U.S. 164, 173-74 (2008). That is, a defendant's competence to represent himself for purposes of pleading guilty turns on whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam), and *Chavez v. United States*, 656 F.2d 512, 518 (9th Cir. 1981)).

The standard for a defendant to be competent to represent himself at trial is higher; a defendant may be "competent" to stand trial or waive counsel for purposes of pleading guilty under *Godinez*, but not have sufficient mental capacity to "carry out the basic tasks needed" to represent himself at trial. *Edwards*, 554 U.S. at 174-78; *Ferguson*, 560 F.3d at 1067-68. The Constitution permits states to insist upon representation by counsel at trial for defendants who suffer from severe mental illness to the point where they are not competent to conduct trial proceedings. *Edwards*, 554 U.S. at 176-78.

A finding that a defendant is competent under the applicable standard, however, is not all that is necessary before he may be permitted to waive his right to counsel. In addition to determining that a defendant who seeks to waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional right is knowing and voluntary. *Godinez*, 509 U.S. at 400. Whereas competency involves a defendant's general ability to understand the proceedings against him, "[t]he purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine

4

whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id*. at 401 n.12.

**Background**

The California Court of Appeal set forth the relevant background:

> On January 6, 2014, Canada moved to strike the allegation that he had a prior conviction of section 314, subdivision (1) [indecent exposure]. Before that motion could be heard, the People filed a first amended information, charging Canada with the same two counts as the original information, but now alleging two prior strikes and three prior prison term convictions. The two alleged prior strike convictions were both for violations of section 245, subd. (a)(1) (assault with a deadly weapon or by means likely to cause great bodily injury, hereafter § 245(a)(1)), one on February 3, 1984, and the other on June 22, 2007. The three prior prison term convictions included the latter prior strike conviction, plus convictions for a violation of section 594, subdivision (a) on August 15, 2005, and for a violation of section 273.5 on February 27, 1998. On January 29, 2014, Canada pleaded not guilty and denied all enhancement allegations.
>
> On February 11, 2014, Canada made a *Marsden* motion [for a new attorney], which was denied. Canada then made a *Faretta* motion to represent himself. The court advised Canada that he should retain counsel at least until his motion to strike the allegation that he had a previous conviction for violating section 314, subdivision (1) was heard. That motion, the court told Canada, was critical to Canada's defense because, if granted, it would change the current alleged violation of section 314, subdivision (1) from a felony to a misdemeanor. Canada agreed and indicated he would raise his Faretta motion again at a later time.
>
> On March 10, 2014, defense counsel expressed doubt as to Canada's competence to stand trial. The court suspended criminal proceedings pursuant to section 1368 and appointed a doctor to examine Canada. On March 18, 2014, the court vacated the initial appointment due to the doctor's unavailability and appointed Dr. Sylvia Shirikian to examine Canada. Dr. Shirikian's report was filed on April 2, 2014. Although it was her opinion that Canada "does suffer from a severe mental disorder," she also opined that he was competent to stand trial. On April 2, 2014, the parties submitted the matter of Canada's competency on Dr. Shirikian's report. The court found Canada to be competent and reinstated criminal proceedings.
>
> On April 23, 2014, the court heard and denied Canada's motion to strike the allegation of a previous conviction for violating section 314, subdivision (1). Canada's counsel then informed the court that Canada wished to renew his *Faretta* motion. Canada was provided the proper forms.
>
> On April 25, 2014, Canada made and the court denied a second

*Marsden* motion.

On April 29, Canada filed a form declaration for defendants who wish to represent themselves. On the same day, the court heard Canada's *Faretta* motion. The court questioned Canada concerning his understanding of the hazards of self-representation. Trial had been set for May 2, and Canada said he would want 60 days to prepare for trial if he represented himself. The court told Canada that without a motion in writing and good cause shown, it would not grant a continuance. At the conclusion of the hearing, the court denied Canada the right to represent himself, commenting: "[Defendant is] very argumentative. He's very belligerent. He doesn't understand any of the court processes. Very hard to focus on getting correct answers to any question. He certainly is not capable of representing himself, in any case. [¶] The 1368 reports as well, really indicate some real challenges for the defendant to actively, accurately represent himself. . . . [¶] . . . [¶] . . . [T]his defendant is not in a position in the interests of justice to capably represent himself."

*Canada*, 2015 WL 5895456, at *1-2 (footnotes omitted).

**Discussion**

The California Court of Appeal set forth the relevant state and federal legal standards and denied this claim:

> Here, the trial court found that even though Canada was competent to stand trial, he was not competent to represent himself. We review the court's denial of Canada's *Faretta* motion for substantial evidence that Canada was not competent to represent himself. (*People v. Johnson*, supra, 53 Cal. 4th at p. 531 ["The trial court's determination regarding a defendant's competence must be upheld if supported by substantial evidence"].)
>
> Dr. Shirikian's competency report stated: "It is my opinion that Mr. Canada does suffer from a severe mental disorder. Although he denies symptomology there is evidence of grandiose, paranoid and delusional thought content experienced over the course of several years. There is also behavioral evidence suggesting the presence of a Bipolar affective disorder, namely Bipolar II, characterized by a hypomanic presentation. Further diagnostic interviewing is required to rule out the presence of hallucinations. Mr. Canada is committed to the masking of his symptoms and does not have any insight into his mental illness. He actively denies the need for any mental health treatment including psychotropic medication despite his involvement and participation in the mental health program while incarcerated within CDCR [California Department of Corrections and Rehabilitation] and as a Mentally Disordered Offender." FN. 6.
>
>> FN. 6. Dr. Shirikian's report noted that Canada had been committed to Atascadero State Hospital in 2006 as a mentally disordered offender pursuant to section 2964.
>
> When Canada made his initial *Faretta* motion on February 11, 2014,

6

the form declaration he submitted to the court had two "no" answers, indicating that he did not understand certain propositions. FN. 7. The court explained to Canada that "unless you can freely and intelligently and voluntarily answer 'yes' to all of these questions, no Judge is going to allow you to represent yourself, because [you] can't. You have to understand what you're doing." When Canada renewed his *Faretta* motion on April 29, 2014, he resubmitted the same form declaration he had used previously, without change to his two "no" answers. This is evidence that Canada failed to understand what the court advised on February 11.

> FN. 7. Question B of the form declaration asks: "Do you understand that certain harm could come to you if you act as your own lawyer? For example, do you know that: . . . ?" This question is followed by seven propositions, to which the defendant must answer "yes" or "no." Canada answered "no" to (1) "It is well known that it is almost always not wise to act as your own lawyer?" and (2) "You may do more harm than good for yourself?" As submitted on April 29, 2014, the answer to the seventh proposition ("No one will be appointed to assist you in your self representation?") was changed from "yes" to "no," but we cannot determine whether that change was made before or after Canada submitted the declaration on February 11, 2014.

On April 29, 2014, the court asked Canada about his "no" answer to the question whether he understood that it is well known that it's almost always not wise to act as your own lawyer. The court told Canada: "You're claiming things that you didn't know about, and that's the whole problem." The court asked Canada if he understood that "it's almost always, even if you are a lawyer, harmful to represent yourself." Instead of answering directly, Canada attempted to explain his "no" answer in a way that does not seem coherent: "With the way that that question was put to me, I answered that question correctly. I had knowledge that-of that charge, but not in the way that they said to me. Also, um-" The court again placed the question to Canada: "So, the question is, sir, do you understand that it is not wise to act as your own lawyer?" Again, Canada did not answer the question directly, and went off on a tangent: "I'm-I am having problems-according to State Bar, I get the final say on how my case is being handled. [Defense counsel] disagrees with State Bar." The court tried to redirect Canada: "I'm not asking about any complaints about the State Bar. What I'm trying to convey to you in this question-" Canada cut the court off, saying "I disagree with that." The court tried to pose the question in other ways, but Canada said "I disagree" to each point the court tried to make, expressing his dissatisfaction with his counsel's representation rather than his understanding of the possible consequences of proceeding without counsel.

We conclude that Dr. Shirikian's opinion that Canada suffers from a severe mental disorder, Canada's answers on the form declaration, his failure at the hearing to demonstrate understanding of the harm that could come to him by proceeding without counsel and his inability to comprehend or respond to the questions the court asked him together constitute substantial evidence that he was not

7

competent to represent himself.

*Canada*, 2015 WL 5895456, at *3-4 (footnotes omitted).

The California Court of Appeal noted the "grey area" set forth in *Edwards* and held that the trial court was correct in finding that while plaintiff was competent to stand trial he was not competent to represent himself. This determination was neither an unreasonable application of Supreme Court authority nor an unreasonable determination of the facts.

Canada initially answered "no" with respect to two questions meant to assess his understanding of the risks associated with self-representation. His "no" answers indicatied that he did not understand that it was unwise to be his own lawyer and that self-representation could lead to more harm than good. Clerk's Transcript ("CT") at 75-77. The trial court explained to Canada that if he wanted to represent himself that he would need to "freely and intelligently" answer "yes" to all of the questions regarding self-representation. Reporter's Transcript ("RT") at 260-63. Several months later, when Canada again sought to represent himself, he continued to answer "no" to the same questions about the risks associated with self-representation. CT at 75-77; RT at 602-09.[1] When the trial court again asked Canada about his understanding of self-representation, Canada responded incoherently and could not directly answer the questions. RT at 602-08. The trial court denied his motion for self-representation.

Canada argues that the trial court denied the motion for self-representation because he had requested a sixty-day continuance, which is an improper reason to deny a *Faretta* request. RT at 609-10. While it is true that the trial court did not grant the motion to continue the trial, the court did so noting why: that for it to grant the motion, Canada would have needed to demonstrate good cause and submit a written motion, neither of which Canada had done. *Id*. A review of the record demonstrates that the California Court of Appeal's determination that Canada was not competent to represent himself at trial was not objectively unreasonable. Canada did request a continuance, which the trial court rejected, but neither the request nor the rejection was the reason the *Faretta* motion was denied. The trial court denied the motion because Canada was not able to coherently

---

[1] Canada resubmitted the same *Faretta* form from the prior court hearing, without changing his "no" answers to "yes." *Canada*, 2015 WL 5895456, at *4. CT at 75-77.

8

indicate that he understood the risks of representing himself. He is not entitled to habeas relief, and this claim is denied.

## CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id*. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has made no showing warranting a certificate and so none is granted.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. Plaintiff's request for an evidentiary hearing (Docket No. 15) is **DENIED** because he has not shown he is entitled to an evidentiary hearing in connection to the claim. *See Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (when state court record precludes habeas relief under § 2254(d), district court not required to hold evidentiary hearing). A Certificate of Appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

**IT IS SO ORDERED.**

Dated: February 8, 2018

JAMES DONATO
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES E. CANADA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOEL MARTINEZ,<br><br>　　　　Defendant. | Case No. 17-cv-01048-JD<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 8, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

James E. Canada ID: AU1244　　4B237
Ironwood State Prison
P.O. Box 2199
Blythe, CA 92226

Dated: February 8, 2018

　　　　　　　　　　　　　　　　　　Susan Y. Soong
　　　　　　　　　　　　　　　　　　Clerk, United States District Court

　　　　　　　　　　　　　　　　　　By: *Lisa R. Clark*
　　　　　　　　　　　　　　　　　　LISA R. CLARK, Deputy Clerk to the
　　　　　　　　　　　　　　　　　　Honorable JAMES DONATO